**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Lorraine Elias, | No. CIV 14-2371-TUC-LAB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§405(g) and 1383(c). (Doc. 1)

The Magistrate Judge presides over this action pursuant to the 28 U.S.C. 636(c). (Doc. 11)

The Commissioner concedes the decision of the Administrative Law Judge (ALJ) denying benefits must be reversed. The action will be remanded for further administrative proceedings.

PROCEDURAL HISTORY

On April 7, 2006, Elias applied for disability insurance benefits and supplemental security income. (Tr. 88, 91). She alleged disability beginning on October 15, 2005, due to fibromyalgia, depression, back problems, high blood pressure, and "prone to illness." (Tr. 107)

Her claim was denied initially (Tr. 54-57) and upon reconsideration. (Tr. 60-66) Elias requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on September 6, 2007. (Tr. 11-18) In her decision, dated November 28, 2007, the ALJ found Elias was not disabled from the alleged onset date, October 15, 2005, until the date of the decision. *Id*. Elias appealed, but the Appeals Council denied review. (Tr. 1-3)

Elias filed an action in this court appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). The Commissioner's final decision was reversed, and the case was remanded for further administrative proceedings. CV-10-244-TUC-CKJ (GEE), (Doc. 25)

Elias supplemented the medical record and appeared with counsel at a second hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on July 16, 2012. (Tr. 530) In her decision, dated August 9, 2012, the ALJ again found Elias was not disabled from the alleged onset date, October 15, 2005, until the date of the decision. (Tr. 511-521) Elias appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 493-496); *See Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Elias subsequently filed this action appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). She argues, among other things, that the ALJ failed to properly credit the opinion of the treating physician R.L. Goedecke, D.O. (Doc. 14)

The Commissioner filed an answering brief on April 8, 2015. (Doc. 18) She concedes the ALJ's decision must be reversed and argues the case should be remanded for further administrative proceedings. *Id*. Elias filed a reply on April 27, 2015. (Doc. 19) She argues the action should be remanded for an award of benefits. *Id*.

<u>Claimant's Work History and Medical History</u>

At the time of the second hearing, Elias was 55 years old and a high school graduate. (Tr. 532-534).

She previously worked full-time as a registration and attendance clerk. (Tr. 536) She briefly worked selling Avon products and doing odd jobs for an elderly couple. (Tr. 537)

The medical record begins in 2002 with a prescription record for Levoxyl, which is used to treat hypothyroidism, and Cartia, which is used to treat hypertension. (Tr. 395-96, 461)

In 2003, Elias was diagnosed with breast cancer and was treated with a modified radical mastectomy. (Tr. 222, 264) After surgery, she was prescribed Tamoxifen and then Aromasin. (Tr. 298, 301, 303). Aromasin is an aromatase inactivator that "decreases the availability of estrogen needed to maintain tumor growth." The Merck Manual of Diagnosis and Therapy, Seventeenth Ed., p. 1982 (1999); http://www.pdr.net/drug-summary/Aromasin-exemestane-475 #16. Her subsequent x-rays and mammograms were negative for any cancer recurrence. (Tr. 298, 300, 422, 424)

X-rays taken in January of 2005 indicate mild hypertrophic spondylosis of the dorsal spine. (Tr. 425)

In May of 2006, Elias' treating physician, R.L. Goedecke, D.O., prescribed Zoloft for depression, which Elias attributed to her cancer medication. (Tr. 401) In June of 2006, Elias reported mental cloudiness, forgetfulness, memory loss, neck and shoulder pain, right hand pain, and pain down the back of her legs. (Tr. 401) She expressed a desire to be tested for fibromyalgia. (Tr. 401) In September of 2006, Goedecke noted Elias had a positive test for ANA (antinuclear antibody) indicating a possible autoimmune reaction. (Tr. 398)

Earlier, in July of 2006, Elias sought treatment for depression at COPE Behavioral Services, Inc. (Tr. 355-58) She was prescribed Zoloft by Richard Barnes, M.D. (Tr. 477, 481, 485)

Goedecke referred Elias to a rheumatologist, J. Steven Strong, M.D., for neck and shoulder pain. (Tr. 323) In November of 2006, Strong examined Elias and recorded the following impression: "1. Cervical spondylosis with DDD, C4, C5 and C6; 2. Lumbar degenerative facet disease at L4/L5 and L5/S1; 3. History of low thyroid function, on thyroid replacement medication; 4. Essential HTN; 5. Status post breast malignancy, on long term Aromasin therapy." (Tr. 323) (punctuation modified) He noted that, while Elias had a positive

1  ANA test, she does not have active collagen disease. *Id.* He noted "mechanical abnormalities
2  developing in her C and L spine" and recommended strengthening exercises and weight
3  reduction. *Id.* He opined that her lethargy and fatigue may be a side effect of her medication.
4  *Id.*

5  Previously, in June of 2006, Paul J. Tangeman, reviewed the medical record and
6  completed a Psychiatric Review Technique form assessing Elias' psychological limitations. (Tr.
7  276-89) Tangeman found "no medically determinable impairment." *Id.*

8  In July of 2006, Elias was examined by Jeri B. Hassman, M.D., at the behest of the state
9  disability determination service. (Tr. 290) Hassman offered the following diagnoses: "History
10 of stage 2 breast cancer and status post left mastectomy in 2003, currently on Aromasin;  No
11 evidence of fibromyalgia;  Hypertension, controlled on medications; Depression. . . ." (Tr. 293)
12 Hassman opined Elias could lift or carry 20-30 pounds occasionally and 10 pounds frequently.
13 (Tr. 294)

14 In January of 2007, Charles Fina, M.D., reviewed the medical record and completed a
15 Physical Residual Functional Capacity Assessment of Elias' ability to perform work related
16 tasks. (Tr. 52, 386-93) Fina noted a primary diagnosis of hypertension and back pain. (Tr.
17 386-93) He noted a secondary diagnosis of obesity and depression. *Id.* Fina concluded Elias
18 could lift 50 pounds occasionally and 25 pounds frequently. *Id.* She could stand, walk, or sit
19 about 6 hours in an 8-hour day. *Id.* He noted Elias should only occasionally climb ladders,
20 ropes, and scaffolds. *Id.*

21 In January of 2007, Eugene Campbell, reviewed the medical record and completed a
22 Psychiatric Review Technique form assessing Elias' psychological limitations. (Tr. 372-85)
23 Campbell assessed a non-severe affective disorder. *Id.* He found Elias is mildly restricted in
24 her "activities of daily living" and has mild difficulties "maintaining concentration, persistence
25 or pace." *Id.*

26 In June of 2007, Elias underwent a nerve conduction study by Kaidong Wang, M.D. (Tr.
27 427-30) Elias complained of numbness and tingling primarily in the fingertips of her right hand
28 over the past 3 years. *Id.* She also complained of neck pain for at least the past five years. *Id.*

1  Wang diagnosed "moderately severe bilateral carpal tunnel syndrome." (Tr. 430) He found "no
2  evidence of cervical radiculopathy." *Id*. He recommended braces and education. *Id*. He did
3  not think surgery was needed at that time. *Id*.

4  In August of 2007, Richard Barnes, M.D., completed a Medical Source Statement
5  Concerning the Nature and Severity of an Individual's Mental Impairment. (Tr. 447-50)
6  Barnes found Elias "markedly limited" in her "ability to perform activities within a schedule,
7  maintain regular attendance and be punctual within customary tolerances." (Tr. 448) He found
8  her "moderately limited" in her "ability to complete a normal work day and workweek without
9  interruption from psychologically based symptoms . . ." *Id*.

10 In September of 2007, Elias' treating physician, R.L. Goedecke, D.O., completed a
11 Medical Source Statement Concerning the Nature and Severity of an Individual's Physical
12 Impairment. (Tr. 452) He opined Elias could carry less than 10 pounds occasionally and
13 nothing frequently. *Id*. She could stand or walk less than 2 hours in an 8-hour day. *Id*. She
14 could not sit, climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, or feel. (Tr. 452-
15 53) He opined Elias was "unable to handle any occupation" due to her Aromasin treatment,
16 joint pain, chronic fatigue, and fibromyalgia-lupus. (Tr. 454)

17 On September 4, 2007, Elias' sister, Barbara R. Hutchings, wrote a letter on Elias's
18 behalf. (Tr. 243) Hutchings wrote that she gives Elias and her son rides when Elias is not
19 feeling well. *Id*. Sometimes, she picks up groceries for them. *Id*. Hutchings estimates that she
20 helps Elias with errands "a few times a month." *Id*.

21 At a hearing before the ALJ on July 16, 2012, Elias testified that she is unable to work
22 due to "a big decline in my mental strengths, my mental capacities as far as remembering, as
23 far as the thought process, my extreme fatigue that I'm still experiencing." (Tr. 541) She
24 opined her fatigue could be caused by her medications. (Tr. 541) She also complained of
25 "achiness that I feel in my body, the pain, my neck and shoulders from the fibromyalgia." (Tr.
26 541)

1  Elias also complained of back pain.  (Tr. 542)  She stated, "I have a problem with my
2 lower back and my sciatic."  (Tr. 542)  Elias conceded, however, that she is not a doctor and
3 does not know for certain that her pain comes from fibromyalgia or sciatica.  (Tr. 544)
4  Since the previous hearing, she has not had hand surgery, but her physician has
5 prescribed hand braces.  (Tr. 538)  She stated they help "a little bit."  (Tr. 539)
6  Elias takes hydrochlorothiazide for blood pressure, levothyroxine for her thyroid and
7 sertraline for depression. (Tr. 545) She no longer takes Aromasin to prevent breast cancer. (Tr.
8 545) She states she is fatigued and naps for a couple of hours "maybe four days out of a week."
9 (Tr. 545)  Elias testified that she shops for groceries, but her son helps her now.  (Tr. 545-546)
10  Vocational expert Kathleen McAlpine testified that the attendance clerk and data entry
11 clerk jobs are sedentary and semiskilled.  (Tr. 547-548)  She further testified that a person with
12 the same age, education, and vocational background as Elias who could perform light level
13 work and was limited to frequent climbing, balancing, stooping, kneeling, crouching and
14 crawling, and could occasionally climb ladders, ropes, and scaffolds could work as a data entry
15 clerk, security guard, companion, or hostess.  (Tr. 549-552)  Such a person could still work as
16 a security guard, companion, or hostess if they could use their right hand only frequently but
17 not continuously.  (Tr. 551-552)
18
19 CLAIM EVALUATION
20  Social Security Administration (SSA) regulations require that disability claims be
21 evaluated pursuant to a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920; *Baxter*
22 *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991).  The first step requires a determination of
23 whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4),
24 416.920(a)(4).  If so, then the claimant is not disabled, and benefits are denied.  *Id.*  If the
25 claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which
26 requires a determination of whether the claimant has a "medically severe impairment or
27 combination of impairments."  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
28

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Id*. Based on the claimant's exertional ability, age, education, and work experience, the grids determine whether or not the claimant is disabled. *Id.* The grids are a valid basis for denying claims where they completely and accurately describes the claimant's abilities and limitations. *Id.* at 1101-02.

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 7 -

1    If the claimant has significant nonexertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non[]exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988). Mental limitations are nonexertional. *Id.* at 1340-41. If nonexertional limitations "significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable," and the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

"The burden of proof is on the claimant as to steps one to four." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "As to step five, the burden shifts to the Commissioner." *Id.*

<u>The ALJ's Findings</u>

At step one of the disability analysis, the ALJ found Elias "has not engaged in substantial gainful activity since October 15, 2005, the alleged onset date." (Tr. 513) At step two, she found Elias has "the following severe combination of impairments: status post breast cancer and mastectomy; back pain." *Id.* At step three, the ALJ found Elias's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 518)

The ALJ then analysed Elias's residual functional capacity (RFC). (Tr. 518) The ALJ overlooked Goedecke's opinion and erroneously stated "none of the claimant's treating physicians has completed a medical source statement on the claimant's ability to do work-related physical activities." (Tr. 520) She found Elias has the residual functional capacity to perform a light level work[2] "except that postural activities are limited to frequent for climbing, balancing, stooping, kneeling, crouching and crawling; she can occasionally climb ladders, ropes and scaffolds." *Id*.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567, 416.967.

- 8 -

1  At step four, the ALJ found Elias was able to perform her "past relevant work as a data
2  entry clerk (school attendance clerk)" and was not disabled. (Tr. 520-521)

## STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if she sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if she provides specific and legitimate reasons supported by

1  substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between
2  a medical opinion as to a physical condition and a medical opinion on the ultimate issue of
3  disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

4        "The opinion of an examining physician is, in turn, entitled to greater weight than the
5  opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
6  "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
7  uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,
8  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
9  that are supported by substantial evidence in the record." *Id.* at 830-31.

10       The ALJ need not accept the claimant's subjective testimony of disability, but if she
11 decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81
12 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the
13 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
14 *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not
15 credible and what evidence undermines the claimant's complaints." *Id.*

16
17       <u>DISCUSSION</u>
18       The ALJ erred by not considering the opinion of the treating physician Goedecke when
19 evaluating Elias's RFC. The Commissioner concedes this point and acknowledges that the case
20 must be remanded. The court must decide whether that remand should be for further
21 administrative proceedings or for payment of benefits.

22       Ordinarily, if the Commissioner is reversed, the court should remand for further
23 administrative proceedings. The court may, however, remand for payment of benefits if "(1)
24 the record has been fully developed and further administrative proceedings would serve no
25 useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
26 evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited
27 evidence were credited as true, the ALJ would be required to find the claimant disabled on
28 remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The case should be

remanded for further proceedings, however, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *See Garrison*, 759 F.3d at 1022. "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Commissioner of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Here, Elias argues that the ALJ impermissibly ignored Goedecke's opinion of her physical limitations, and she should be awarded benefits on the strength of his opinion.

Goedecke opined in September of 2007 that Elias could carry less than 10 pounds occasionally and nothing frequently. (Tr. 452) He further concluded she could stand or walk less than 2 hours in an 8-hour day. *Id*. She could not tolerate any amount of sitting. *Id*. She could never push or pull with her upper or lower extremities. *Id*. He further concluded that Elias was "unable to handle any occupation." (Tr. 454) Goedecke's opinion, if credited as true, would mean that Elias was indeed disabled. Certain aspects of his opinion, however, are inconsistent with the record as a whole. These inconsistencies must be addressed before the issue of disability can be resolved.

For example, Goedecke's opinion is so limiting is seems to preclude any employment at all. The record indicates, however, that Elias was working part-time in May of 2012. (Tr. 676)

Goedecke's opinion that Elias cannot tolerate any amount of sitting and could never push or pull with her upper or lower extremities seems to rule out driving a car. Elias, however, testified in her first hearing that she does drive. (Tr. 26)

Moreover, Goedecke attributed Elias's functional limitations, at least in part, to her treatment with Aromasin. Elias, however, stated at the second hearing that she stopped taking Aromasin in the summer of 2011. (Tr. 545)

Goedecke also stated that Elias's physical limitation could be attributed to her fibromyalgia. Elias, however, conceded at the second hearing that she has not been diagnosed with fibromyalgia. (Tr. 544) Goedecke previously referred Elias to a rheumatologist, J. Steven Strong, M.D., for neck and shoulder pain. (Tr. 323); (Doc. 14, p. 7) In November of 2006,

- 11 -

1  Strong examined Elias, and found that, while Elias has a positive ANA test, she does not have
2  active collagen disease. (Tr. 323)  He concluded, "[s]he is not a candidate for steroid therapy
3  or immunosuppressive therapy." (Tr. 323)   For her joint pain, Strong prescribed head lift
4  exercises, swimming, and weight reduction. (Tr. 323)  Ordinarily, the opinion of a specialist
5  in his area of expertise is given more weight than the opinion of a generalist.  *Holohan v.*
6  *Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

   The inconsistencies between Goedecke's opinion and the record as a whole "create[]
   serious doubt as to whether the claimant is, in fact, disabled." *Garrison*,  759 F.3d at 1022.
   This case will be remanded for further administrative proceedings. *See, e.g., Burrell v. Colvin*,
   775 F.3d 1133, 1141 (9th Cir. 2014)  (remand for further administrative proceedings ordered
   where " the record as a whole creates serious doubt as to whether Claimant is, in fact,
   disabled."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015)  (remand for
   further administrative proceedings ordered where there was a "significant factual conflict in the
   record.").

   IT IS ORDERED that the final decision of the Commissioner is reversed.   The case is
   remanded for further administrative proceedings.

   The Clerk of the Court is directed to prepare a judgment and close this case.

   DATED this 25th day of April, 2016.

   *Leslie A. Bowman*
   Leslie A. Bowman
   United States Magistrate Judge

- 12 -